

May 5, 2025

**VIA E-FILING**
The Honorable Maryellen Noreika
J. Caleb Boggs Federal Building
844 N. King Street          **FILED UNDER SEAL**
Unit 19
Room 4324
Wilmington, DE 19801-3555

Re: *In re Focus Financial Partners, Inc. Securities Litigation,* C.A. No. 23-cv-1466-MN

Dear Judge Noreika:

Lead Plaintiffs AltShares Event-Driven ETF, AltShares Merger Arbitrage ETF, Kryger Event Fund Ltd., Kryger Enhanced Fund Ltd., and ODS Capital LLC ("Lead Plaintiffs") respectfully seek leave (the "Motion") to file their Consolidated Amended Class Action Complaint for Violations of the Federal Securities Laws ("Amended Complaint"), in accordance with this Court's April 15, 2025 Order (D.I. 45). The Amended Complaint and redline comparison to the Consolidated Class Action Complaint (D.I. 19) are attached. *See* Exhibits A-B.

The Amended Complaint addresses the bases the Court articulated for its decision on Defendants' motion to dismiss. It includes new information from Focus Financial Partners Inc.'s ("Focus") document production regarding Wealth Enhancement Group's ("WEG") communications with Focus and its representatives related to WEG's interest in acquiring Focus. It also addresses other pleading concerns raised in the Court's order, including changes to the loss causation allegations, and it eliminates, among other things: (i) Lead Plaintiffs' claim for violations of Section 10(b) of the Securities Exchange Act of 1934, (ii) several defendants, and (iii) a number of other allegations not core to Lead Plaintiffs' claims.

Rule 15 provides that a party may amend its pleadings with the court's leave, and that leave should be freely given when justice so requires. Fed. R. Civ. P. 15(a)(2). The decision to grant or deny leave to amend lies within the discretion of the court. *See Foman v. Davis*, 371 U.S. 178, 182 (1962); *In re Burlington Coat Factory Sec. Litig.*, 114 F.3d 1410, 1434 (3d Cir. 1997). The Third Circuit has adopted a liberal approach to the amendment of pleadings. *See Dole v. Arco*, 921 F.2d 484, 487 (3d Cir. 1990). The amendment should be freely granted in the absence of undue delay, bad faith, or dilatory motives unless the amendment is either futile or unfairly prejudicial to the non-moving party. *See Foman*, 371 U.S. at 182; *Burlington*, 114 F.3d at 1434. For the reasons discussed below, Lead Plaintiffs respectfully request that the Court permit amendment here.

Lead Plaintiffs' Motion is brought in good faith and will not unfairly prejudice Defendants who previously agreed to the filing of an amendment. D.I. 44. Lead Plaintiffs' Motion is also not futile. The Amended Complaint now makes clear that this is a classic two bidder case. Defendants, determined to obtain approval for a Merger with Clayton, Dubilier & Rice ("CD&R"), falsely assured Focus' stockholders, through a series of misrepresentations and omissions in the Proxy,

that a superior offer made by Party I—which we now know consisted of WEG and its two financial partners Onex Corporation ("Onex") and TA Associates ("TA")—was "***unlikely to result in a definitive transaction***" and that the Merger price of $53 per share (the "Merger Consideration") was the "***Best Value Reasonably Obtainable***" that they could expect to receive for their Focus stock. These statements were demonstrably untrue. *See In re Pattern Energy Grp. Inc. Sec. Litig.*, No. CV 20-275 (MN) (JLH), 2022 WL 957761, at *2 (D. Del. Mar. 30, 2022) (upholding a Section 14(a) claim that the Special Committee did not actually believe the merger consideration "represented the best value reasonably available to our stockholders" upon alleged facts showing, as here, that the Special Committee knew another bidder offered a higher price and that bidder remained willing to engage on more favorable terms).

Here, internal Company documents make clear that on January 28, 2023, when Focus was choosing between entering an exclusivity period with WEG or with CD&R—and with WEG offering $2 per share more than CD&R—***both bidders stood on virtually equal footing***. **Both bidders** had made proposals conditioned on additional diligence and funding. And the minutes make clear that CD&R's bid had significant complexities not present in WEG's bid, as it was also conditioned on CD&R reaching a rollover agreement with Focus' largest stockholder Stone Point Capital LLC ("Stone Point"), which was still being negotiated at that time. **Both bidders** sought the same three to four weeks to make a definitive proposal—though WEG was willing to agree to just two weeks to do so at the Special Committee's request. **Both bidders** asked for permission to solicit outside funding for the transaction, because neither had funding in place as of the January 28, 2023 Special Committee meeting. And **both bidders** wanted to contact at least one common funder—the same sovereign wealth fund. While CD&R's delay in funding is unexplained in the Proxy and the internal Company documents, Defendants' own documents make clear that it was the Company's fault that WEG had not yet secured full funding by the time of the January 28th proposals. WEG had previously and repeatedly requested the Special Committee's permission to speak with a subset of lenders. Yet, Focus chose to enter an exclusivity period with CD&R, resulting in the Merger at a lower value than WEG was offering.

While the Proxy omitted any facts regarding Party I's financial capabilities as a bidder other than that it was "***unlikely***" to close a definitive transaction, Defendants knew that WEG was a credible bidder that was clearly capable of closing a transaction. WEG, together with Onex and TA, has in recent years embarked on an accelerated plan of targeted acquisitions and in 2022 completed the most acquisitions of registered investment advisory ("RIA") firms of any other company in the industry, including Focus. WEG, Onex, and TA—comprising Party I here—had deep ties to fund the Focus transaction just as they had countless other transactions. In fact, the financial resources of WEG, Onex, and TA dwarf those of CD&R by any measure and, in combination, they share a track record of successful acquisitions that is at least comparable to that of CD&R—particularly in the RIA space.

In short, the Special Committee had a ready, willing, and able alternative bidder in WEG and its financial partners, offering $2 more per share in a simpler transaction structure on at least the same financial footing as CD&R. None of this was disclosed in the Proxy. Instead, the Proxy misleadingly told shareholders that the Special Committee chose CD&R, in part because WEG's proposal was deemed "preliminary and subject to additional due diligence and ***unlikely to result in a definitive transaction***." These misrepresentations and omissions, including the credibility of

WEG's bid in comparison to the winning bidder CD&R, are demonstrably material to investors. Indeed, Defendants could not possibly have held a sincere belief that the clearly inferior CD&R bid was the "***Best Value Reasonably Obtainable***" for Focus shareholders and was reached "***pursuant to a thorough process***" as stated in the Proxy.

The added allegations also show, at a minimum, Lead Plaintiffs have a plausible claim that Defendants misstated multiple facts about the "***rigorous nature***" of the bid process, including: (i) the nature and timing of WEG's outreach to Focus regarding its interest in acquiring the company, (ii) the supposed lack of interest of strategic investors like WEG in the Company and, (iii) that strategic and other financial investors were excluded from the process. These were misrepresentations and omissions were material to stockholders. *See TSC Indus., Inc. v. Northway, Inc.*, 426 U.S. 438, 449 (1976) ("An omitted fact is material if there is a substantial likelihood that a reasonable shareholder would consider it important in deciding how to vote.").

The Amended Complaint also adds new loss causation allegations, that, among other things, demonstrate that stockholders were deprived of an informed vote on the Merger by the material misstatements and omissions in the Proxy, that the Proxy was an essential link in the Merger transaction, and that as a result investors suffered economic harm including that they were deprived of the economic value of WEG's readily available superior bid. *See Mills v. Elec. Auto-Lite Co.*, 396 U.S. 375, 385 (1970). The Amended Complaint also adds allegations of causally-related economic harm: (i) based on the fact the misleading information caused stockholders to forgo appraisal rights and accept a lower sale price (*see In Re Shanda Games Ltd. Sec. Litig.,* 128 F.4th 26, 57-59 (2d Cir. 2025) (holding that being misled to forgo appraisal rights and accept a lower sale price is an economic harm adequately linked to the misrepresentations in the proxy statements); and (ii) that depriving stockholders of the value of the rollover afforded to Stone Point and other insiders is an economic harm directly tied to the misrepresentations and omissions in the Proxy. *See Gould v. American-Hawaiian S.S. Co.*, 535 F.2d 761, 782 (3d Cir. 1976) (finding where misstatements "were relevant to the dichotomy between what the favored shareholders and the plaintiffs were to receive . . . plaintiffs were lulled to inaction and thereby suffered the loss of an opportunity to attempt to secure a merger agreement which would be more favorable to them").

Lead Plaintiffs respectfully submit that the Amended Complaint more than meets the "plausibility" threshold and would survive a motion to dismiss. For the reasons set forth above, Lead Plaintiffs respectfully request that this Court grant Lead Plaintiffs' Motion to amend their complaint and grant Lead Plaintiffs leave to file their Amended Complaint on the docket. We appreciate Your Honor's attention to this matter and would be happy to answer any questions the Court may have.

Respectfully submitted,

*/s/ Brian E. Farnan*

Brian E. Farnan

cc: Counsel of Record (Via E-Mail)